This is 17-3433 Arvin Orlando Lopez v. Atty. Gen. Orlando. I'd like to reserve three minutes for rebuttal. Granted. If it please the court, my name is Sandra Green, counsel for Garvin Lopez. Mr. Lopez is a native and citizen of El Salvador. He was placed into removal proceedings and in response to being placed into removal proceedings, he sought relief from removal in the form of NACARA. During the removal proceedings, the immigration judge indicated that he agreed that Mr. Lopez was eligible for NACARA. The agency filed a motion for reconsideration. A different immigration judge vacated the grant for the decision to allow Mr. Lopez to pursue NACARA relief and subsequently he filed an appeal to the Board of Immigration Appeals. Ms. Green, I think you agree that he is not eligible under NACARA for cancellation of removal unless he is also eligible for a waiver of any disability. He would need to get a waiver, yes. So we had asked you in our notice to the parties to take a look at a couple of regulations that weren't addressed in the briefing. And it seemed when you put them together to indicate that the scheme here for NACARA looks like it's on all fours with YMP. That is that Congress and the agency have provided particular circumstances when you can seek a concurrent waiver. There needs to be some pending application for adjustment of status. And under NACARA, it's Section 202 for which your client is not even eligible. Aside from the point that he had withdrawn that application. So given the explicit terms of the regulation that says that there needs to be the consent of the Attorney General for that application, an adjustment of status is the only way to obtain under that part the waiver of inadmissibility. Why aren't we? Why doesn't this match up exactly with the reasoning of the BIA and YMP? Well, I think that there are several reasons why it doesn't match up. As I read 1245.13c, it's my understanding that the regulation does permit alternate forms of circumstances in which an alien can apply for a 212H waiver. Specifically in the context of NACARA. But I would also point out that the background information that was briefed indicates that there are three areas or three circumstances in which there is an explicit bar to an alien filing a 601 waiver. And that would be where the alien is subject to a three or ten year bar because of unlawful presence, because there's a prior removal, because the alien falls within 1182A.9c. None of those apply. Those are exceptions to being able to apply. The authorization to apply is the terms of Section 202 itself. That's what the regulation points us back towards. And given that he's from El Salvador, the NACARA adjustment of status provisions would not even seem to provide him with the opportunity for relief there. Well, I mean, I see the point that the Court is making. There is a difference in NACARA depending on the nationality of the individual. Our basic position is that Congress did not intend to exclude people, such as the respondent, from being able to obtain relief based on the fact of a small possession of marijuana. There is ample case law within the immigration context in which individuals with those types of convictions are permitted to obtain relief. Our position is that this is precisely the type of situation where Congress would intend for the relief to be available. I don't think we can disagree with you that Congress has carved that out under 212H if you've got marijuana in personal use quantities. But the second requirement is that the Attorney General also have consented to the alien applying for adjustment of status. And the regulations seem to lay out with specificity where the Attorney General has consented to someone applying for adjustment of status under NACARA. Your client doesn't qualify there, and there's no other application under the adjustment of status provisions. So why doesn't that resolve this case? Well, I think it doesn't resolve the case. It may come down to how the court interprets 1145.13. Again, our interpretation of that regulation is that it does permit an individual such as the petitioner to obtain a 212H waiver, notwithstanding the fact that there might be other provisions that seem to limit access to the waiver. Help me understand that, because that ACFR 1245.13C provides that an alien can apply for the 212H waiver if seeking adjustment of status under Section 202 of NACARA. Section 202 of NACARA is only available to Nicaraguan and Cuban nationals. How does that help your client? Well, then further below it says an applicant under 202 may also apply for one or more of the immigrant waivers of an admissibility under 212 of the Act. And again, this is my interpretation of the regulation. Certainly the court can make its own interpretation of the regulation. But based on our interpretation of it, that is the basis for the argument. So your point is, Judge Krause was talking about C2, but you think C1 suffices for you? I can't say that. I wouldn't say that. I would just look at – I'm sorry. I was looking at C1, the second paragraph, the second sentence, the second clause, second sentence of C1. What's the status of the 212H application? For – based on the marriage to the wife? That was withdrawn. He actually is not eligible to adjust to his wife because he didn't have a lawful admission. But you need a 212H waiver, don't you, to get the benefit under NACARA? Correct. So have you filed a new one? Well, no, because the immigration judge pre-terminated the application, so we did not submit it. Okay. So you were barred. Right. Okay. But you're ready, willing, and able to submit it. Right, if the matter is remanded. Isn't your best argument here, though, in response to Judge Krause's questions, that Chenery, you know, there's nothing from the BIA to indicate that that line of analysis was undertaken and a summary remand is required? Well, Your Honor, yes. I mean, I think that is part of the problem. The board's – I mean, it might mean you're in trouble on remand, but at least you've earned a remand, right? I mean, under Chenery. Well, I think part of the problem with the board's analysis is that it was very un-conclusory, and there's not really a lot of rationale behind it. It may be that once that rationale is advanced, it may be that the board agrees with Judge Krause, but that's not present in the decision that was issued by the board. So I don't think the court is actually in a position to make a determination about whether the board's decision should be sustained because there just isn't sufficient discussion. All right. Well, maybe we should hear from the government directly on that. We can add your time to your rebuttal. Thank you. Is that okay? All right. Thank you, Ms. King. Just a question before you sit down. I take from your answer, Judge Ferdinand, in your brief you seem to argue that it was a due process issue, that the BIA had not spelled out its reasoning. At this point, is it your position that it's not a due process issue, but it's a Chenery issue? Well, the argument is that the respondent wasn't given an opportunity to be heard because the board did not provide sufficient rationale to address the issues that he raised below. So we do believe that that falls within a due process fundamental fairness framework, but there might be an alternate basis for that determination as well. Thank you. Let's hear from Mr. Hurley. Would you address what we've been discussing with Ms. Greener? How can the government try to sustain this in light of what you heard from Judge Krause? Yeah, we would rely on the board's decision here where you have to first look whether or not he is eligible for NACARA, and he has to meet those requirements for the 10 years of continuous physical presence since the date of his conviction that rendered him inadmissible. So, again, the IJ decision that denied his car application and then the board decision just starts with the regulation at 1240.66, and that's the reason why the original IJ, there was a grant, he granted NACARA, and then a second IJ said, no, you can't get that because you don't have the 10 years of physical presence, and then that's what the board ruled on. What do we do with the fact that the board doesn't seem to have addressed head-on the question of whether he could seek a concurrent waiver? It would say just look at the board's decision where it says you have to look. I've got it. It's open. It doesn't cite YMP. It doesn't cite Postamone. It doesn't cite Barna. Where do I find the concurrent waiver analysis that incorporates that logic? It's not in there, but what it says is that there are two things for NACARA. You have to be first, Mr. Lopez had a removal order. He had to cancel that removal order first. So first you look at the NACARA regulation at 1246.6. That sets out the four criteria that he's got to be inadmissible. Well, actually, he has a heightened standard because he does have the controlled substance conviction. So the four requirements are that he has to be inadmissible under A2, 12A2, which he is. He has to be physically present, continuous physical presence, for ten years from the date of the conviction that renders him inadmissible. None of that addresses whether he can seek a concurrent waiver of inadmissibility. That was the argument that was raised. How is that addressed, and how could we affirm without it being addressed in the BIA's decision on that ground? Well, it isn't addressed, too, but I think you have to look at the NACARA as two distinct processes. First, you know, he's got this removal order, and he needs to establish that he's eligible for cancellation removal first. And then he can seek adjustment of status after that, and that's where the waiver comes in. I could see if the BIA had gone down that reasoning path that that might be entitled to Chevron deference. What I don't see is how it's unambiguously compelled by the sources that the BIA in fact cited, and I certainly don't see it spelled out here. And the argument from the petitioner is that that's not the case, that under the INA and under NACARA, you can do these things concurrently. Now, you're assuming the answer, and that the BIA was making a decision on that, but it doesn't acknowledge that or give us any reasoning that suggests that it in fact answered that question. No, it didn't, and it didn't address the concurrent waiver application. It could have, right? I guess in a perfect world view, from your perspective, you would want the BIA to have said, you can't even ask for this NACARA relief unless you come with a 212H waiver in hand, and you don't have one, so you lose. Is that how you see the law? I think, you know, what the agency's basis decision was on, just the NACARA regulation, which says that there are two kinds of NACARA. One is the seven-year requirement for continuous presence, but then if you are, you have a controlled substance conviction, it bumps up to the 10-year, and that's the steps that the agency took in this case. Right, but I guess what we're pressing you on, all three of us, is that you can't view it as a hermetically sealed NACARA analysis because you've got the 212H issue, right? Are you saying the 212H issue is not an issue? Well, I think what the agency was saying was that you can't erase the fact that this guy doesn't have 10 years of continuous physical presence since that, since his controlled substance conviction, which was incurred while he was in removal proceedings. So it just said that, you know, just the fact of it, and that's what the Bustamante case was about, that you can't erase it. There was a case that's pegged to conviction. This one doesn't require, it's not about that. So the analysis could be different, and we don't have any discussion here on whether it should be different or not. I don't know if I understand exactly your point about the conviction because that's what controls this case that he got this January 2015 controlled substance conviction. Bustamante addresses the language that talked about inadmissibility based on a conviction, and it expressly distinguished domestic violence and child abuse cases where that statutory scheme provided for inadmissibility. So if there had been a determination of a waiver of inadmissibility, it suggested that that would be different. The statute here, NACARA, like the domestic violence provisions, talks about inadmissibility, not conviction. So Bustamante seems to cut the other way. Well, if you look at some of those, the other decisions that, this case is about the timing and how he, in order to qualify for NACARA, he needs that 10-year. And the board and the immigration judges found that according to 124066, he needed the 10 years of continuous physical presence from the date of the conviction. And it happened while he was in removal proceedings, so he didn't have the 10 years. And that's why, in the board's decision, it just stopped. It said that even if he could apply for this waiver, he couldn't get NACARA. But if he could apply for the waiver, that could have altered the 10-year and made it 7, no? Well, that's why we rely on the fact of the conviction. You can't erase the fact of the conviction. I mean, the requirements were set out in the regulation that, okay, you do have this controlled substance conviction, but we'll subject you to a heightened requirement of 10 years. And if this conviction had happened in 2005 or something like that, or before then, he would be okay. But because it happened while he was in removal proceedings, there was no chance that he could get the 10 years. If you look at the 1240-66 regulation, that's just based on this. That's the basis of the agency's decision in this case. Why wouldn't that be answered if he obtained a waiver of inadmissibility? The 1240-66 requires someone who qualifies for cancellation of removal under NACARA, who is inadmissible under 212A, to demonstrate not less than 10 years of continuous physical presence. But the petitioner's argument is that he's not inadmissible under 212A because if he were permitted to seek a concurrent waiver of inadmissibility under 212H, then he wouldn't be admissible under 212A. This 10-year provision would not apply, and this regulation would not be on the table. Well, again, that goes to our point that he was removable, and he needs to cancel the removal. The process is that you apply for NACARA, and first you have to cancel your removal first, and then you can adjust status, and that's the process. The agency here just focused on the 1240-66 and said that, when the regulation sets forth the heightened requirements, that, okay, you do have this controlled substance conviction. You can still get NACARA, but it needs to be 10 years. It needs to be in the past a while, and that's where the agency started and stopped in this case. And it said, you know, even if he could apply for the 212H waiver, it wouldn't matter because he still couldn't cancel his removal. Because it doesn't vitiate the conviction. Correct. So the conviction is the crux of your argument, as I understand it, is the conviction is locked in place even if he's successful in getting a 212H waiver. Because he doesn't have 10 years. In order to get NACARA, in order to cancel his removal, he could get that, but he needed 10 years. And the fact that he got this controlled substance conviction while he was in removal proceedings. All right. Assume for a minute we disagree with you in that regard. What's your analysis of what Judge Krause was addressing with Ms. Green on 8 CFR 1245.1F and 1245.13C and the matter of YMP? We didn't, again, the agency didn't really address, it's not in the board's decision, the 1245. I know you can't defend the board's decision on those grounds. I'm asking, if the case were to be remanded, how do you see those regulations and that decision of YMP applying here? Do you see them being relevant or not? Well, this case is about NACARA and 1245, 8 CFR 1245, deals with an adjustment of status application that's not, it's like different from NACARA. And he didn't apply for, I guess he had an I-130 based on his wife, but then they withdrew that and they didn't apply, 1245 doesn't come into this. So 1245 doesn't apply because this is a NACARA case? Correct. And I think that's the first hurdle that he needs to get through in order to cancel his removal. He's removable and he needs to cancel the removal before you move on to the waiver and the adjustment question. And that's, again, that's what the board and the immigration judges based their decision on, and that's the decision I have for you. How do you reconcile that with the two regulations that we asked you to address, which seem to provide that when it comes to adjustment of status, looking at 1255 adjustment of status and the regulations that interpret that, 1245.13C is providing that an alien may apply for a 212 waiver if seeking adjustment of status under NACARA. I agree that there's a disconnect there, but you have to kind of go through the process of what the immigration judges and the board is dealing with here where he's removable and for relief from removal, he requested NACARA and they went to the regulation and the regulation set forth that criteria and he didn't meet it. And I realize that 1245 has language about you can use these waivers for NACARA, but it's really specific in the NACARA regulation about the criteria, and that's what the immigration judge and the board based their decision on. You have to cancel the removal order first and then you can move on to the adjustment of status. How would that happen practically speaking? Ms. Green indicated it was pre-permitted and there was sort of no opportunity to get a 212 waiver. The adjustment under 1245 or NACARA? Getting the 212 waiver. How could that be obtained so that someone in Mr. Lopez's position could then go to the IJ and say, look, I've got this in hand so I want NACARA relief? All I can say about that is that in this case they found that he wasn't, they just started and stopped with the NACARA application. So when, as far as the waiver goes, it found that the specific requirement of 10 years from the date of his conviction, you know, he just didn't have those 10 years. So there's no opportunity to even get the waiver because once you've got the conviction, you're saying the conviction can't be vitiated and then you've got the 10-year bar, so it would be futile to attempt to even get a 212H waiver. And that's what the board said in this case, that he's got the burden for both the cancellation and removal and for this waiver. And because he doesn't have the 10 years for when this happened, it wouldn't help him because by the statute he couldn't qualify for NACARA. I want to try going back one more time because I don't understand how your argument reconciles with Bustamante, and perhaps it does, but if you could walk me through that. Because the point in Bustamante, I thought, was that Section 240AB1 provided for relief. Cancellation of removal there under the terms of the statute was available only to an alien who had not been convicted of an offense under 212A. And the court looked to that language of having been convicted of and said, the existence of that conviction is the end of the story. And then it distinguished domestic violence statutory scheme, which used the language not was convicted of, but is not inadmissible. And in NACARA, the special rule for cancellation of removal under NACARA provides, just like in the domestic violence setting, that the attorney general can cancel removal in a just status if the alien is not inadmissible. Not if the alien is not convicted of or doesn't have a conviction for. So why isn't this just as in the domestic violence situation that the BIA was distinguishing in Bustamante, why isn't this still an available avenue of relief? You keep turning back to the conviction, but the BIA focused on the difference in the language in the different statutory schemes. Well, again, I would have to rely on what the immigration judge and the board relied on in this case, where it went to the specific language of NACARA, where it said, you know, he's inadmissible under A2, which is spelled out specifically in 1240-66. And he's got this conviction that disqualifies him from having his removal canceled. And my understanding of the Bustamante case is that the 212A waiver won't, you know, it could waive, it can't waive the fact of the conviction. And that's all, that's what the immigration judge and the board relied on here, that he's got this January 2015 marijuana possession conviction. So that's a point in time he needs 10 years from that point on, and then he can get this heightened standard for NACARA relief. All right. Thank you. Mr. Hurley, we'll hear back from Ms. Green on the rebuttal. I would just point out that the government focuses on the timing issue, but it kind of appears to be a moot argument. If he had the 10 years, he wouldn't need a waiver. I mean, it doesn't address the failure of the board to provide some rationale as to why the waiver requested by Mr. Lopez isn't available. I would also point out that the government did admit that 1245.13F, that there's a disconnect. And so to the extent that there is some ambiguity in the regulation, then we would argue it should be resolved in favor of Mr. Lopez. What about the government's argument that once you have a conviction that's within the 10-year, or that deprives him of the opportunity to establish the 10 years, as this 2015 conviction did, that he just can't even seek a waiver? Well, I mean, it's true. I mean, if there's a 10-year, if the 10-year requirement is imposed on him, he can't get NACARA. That's why our argument is that it's a 7-year case, and it starts from the time that he, 7 years prior to the time that he filed the NACARA application, which was in 2010. So it's our argument that within that 7-year period of time, he would, if he got a waiver, he would qualify for NACARA. But if the 10-year period is applicable, he would not. But to vitiate the 10-year period, don't you need to somehow undo the 2015 conviction or have it rendered nugatory? And that would be, how that would happen would be through a grant of a waiver. Okay. The 212 waiver. So really the case comes down to the sort of decision point for us is the question of whether the waiver wipes out the 2015 conviction. Well, yeah, essentially. But the issue is whether, you know, whether he's eligible for the waiver, and if that's the case, then the 7-year, the relevant time frame would be the 7 years prior to the date that he submitted the application, not the time following his conviction. It seems like a real chicken-and-an-egg problem, isn't it? I mean, if you had the waiver, then I think you could argue the 7 years, but you don't have the waiver, so you're stuck with the 10 years. But I guess your response to that is, well, I can't get the waiver because it was pre-permitted? Right. I mean, the court did not permit us to submit the application. But beyond that, if that's the position that the board is going to take, the board should provide some rationale for why it believes that that is the appropriate interpretation of the regulations and the statute. And that analysis was not provided in the decision issued by the board. All right. Thank you, Ms. Green. We thank counsel for the argument. We'll take the matter under advisement.